**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IRON WORKERS LOCAL 7, of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers,<br><br>Plaintiff,<br><br>v.<br><br>HOLTEC DECOMMISSIONING INTERNATIONAL, LLC and CHAMPION SPECIALTY SERVICES, LLC,<br><br>Defendants. | C.A. No. 1:26-cv-13333-MJJ |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS</u>**

Although Plaintiff Iron Workers Local 7, of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Local 7"), did not sign and is not a party to the National Labor Agreement for the Decommissioning, Decontamination and Demolition of Nuclear Power Generation Facilities ("NLA"), it nonetheless asks this Court to compel arbitration under that agreement. The Court should dismiss the petition. Local 7 did not sign the NLA; it is not an intended beneficiary of the NLA's arbitration provision; and the NLA's arbitration provision does not cover this dispute. Defendants Holtec Decommissioning International, LLC ("HDI") and Champion Specialty Services, LLC ("Champion") therefore respectfully request that this Court grant their Joint Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND AND PROCEDURAL HISTORY

HDI is a wholly-owned subsidiary of Holtec International and the licensed Nuclear Regulatory Commission operator for its acquired nuclear power plants, including the Pilgrim Nuclear Power Plant ("Pilgrim Plant") in Plymouth, Massachusetts. *See* Doc. No. 1 at ¶¶ 8-10 (Action & Pet. To Compel Arbitration ("Petition")). To govern decommissioning and site restoration work across its facilities, HDI executed the NLA with certain international labor unions. *See* Doc. No. 1-2 at 2, 18. Five international unions are listed in and signatory to the agreement. *Id.* Local 7 is not a signatory to the NLA. *See id.*

The NLA establishes itself as the sole source of agreement between HDI and the signatory unions. *Id.* at 3 (NLA, Art. I § 3). It grants HDI exclusive management rights over planning, directing, and controlling the operation of all work, including hiring and discipline, and limits liability to separate, non-joint obligations, specifically noting that "[t]he Unions agree that this Agreement does not have the effect of creating any joint employer status between or among the Contractor(s) or any employer." *Id.* at 4-5 (NLA, Art. I, § 8 & Art. II).

Although the NLA references "local unions" in specific contexts, like wage integration, *see id.* at 10 (NLA, Art. IX §§ 1, 4), and project visitation rules, *see id.* (NLA, Art. VIII)—it structures dispute resolution exclusively around the signatory international unions and the Contractor. Specifically, NLA Article V governs grievances and arbitration:

> **ARTICLE V - GRIEVANCE PROCEDURE**
>
> Any dispute alleging a violation of this Agreement (excluding jurisdictional disputes and alleged violations of Article XIX) shall be resolved in accordance with the procedure set forth herein. The Contractor and the Jobsite Representative of the Union involved will first attempt to resolve the dispute prior to a formal grievance being filed. If no resolution can be achieved informally, a grievance shall be filed within five (5) working days after the event giving rise to the grievance is brought to the attention of the grieving party but no

> later than ten (10) working days from the event giving rise to the grievance. The respective time limits between grievance steps may be extended by mutual agreement of the parties. Settlement of grievances may be arrived at in any step of the grievance procedure and shall be final and binding upon the Unions and the Contractor.
>
> Step 1: Between the Contractor and the Business Representative of the local union involved within ten (10) calendar days from the date the grievance is filed.
>
> Step 2: Between the Contractor and the International Union representative within ten (10) calendar days after the conclusion of the Step 1 meeting.
>
> Step 3: If the grievance is not resolved in the Step 2 meeting, the grieving party may within fifteen (15) calendar days after that meeting notify the other party in writing that it wishes to appeal the grievance to arbitration. The parties then will meet within fifteen (15) calendar days after such notice in order to agree on the selection of the arbitrator. If the parties are unable to agree upon an arbitrator, application may be made by either party to the Federal Mediation and Conciliation Service for a panel of seven (7) arbitrators, upon receipt of which both parties shall immediately, alternately strike names, choosing by lot which party is to strike first, until the last name remains, which person shall be designated as the arbitrator. The decision of the arbitrator shall be final and binding upon the Contractor and the Union and its members.
>
> The Union and the Contractor shall bear their respective cost of the arbitration separately. The fees of the arbitrator shall be equally split between the Union and Contractor.
>
> NOTE: The Contractor and/or Subcontractor as well as the unions may bring forth grievances under this Article.

*Id.* at 8-9. The multi-step grievance procedure proceeds through formal tiers: Step 1 occurs between the Contractor and the Business Representative of the local union involved, Step 2 moves to the International Union representative, and Step 3 permits an appeal to binding arbitration by the grieving party. *Id.*

Under the NLA, HDI may engage subcontractors who execute a Letter of Assent. *Id.* at 16 (NLA, Art. XVII). HDI retained Champion to perform project work at the Pilgrim Plant. Doc. No.

1 at ¶¶ 19-20. Champion hired individual iron workers, including Local 7 member Michael Downing. *Id.* at ¶ 22. On March 17, 2026, an operational incident occurred involving Downing's rigging crew. *Id.* at ¶¶ 24-25. Following an investigation, HDI revoked Downing's site access.[1] *Id.* at ¶ 26. Because Downing lost his site access, Champion laid him off. *Id.* at ¶ 27. Local 7 then attempted to invoke the NLA's grievance and arbitration procedures. *Id.* at ¶¶ 28-30. When HDI and Champion refused to participate, Local 7 filed this action under Section 301 of the Labor Management Relations Act and the Federal Arbitration Act seeking to compel arbitration. *Id.* at ¶¶ 2, 42-51.

## ARGUMENT

### I. STANDARD OF REVIEW

Although First Circuit precedent dictates that "the existence of a valid arbitration agreement does not strip the court of jurisdiction," courts are split on whether dismissal on arbitrability grounds belongs under Rule 12(b)(1) for lack of jurisdiction or Rule 12(b)(6) for failure to state a claim. *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 623 n.8 (1st Cir. 2019). But when no factual dispute mars the text of the agreement, this division is a "distinction without a difference." *Id.* To cover all procedural bases, HDI and Champion move under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Under both rules, the Court accepts the well-pleaded factual allegations in the complaint as true, draws all reasonable inferences in the plaintiff's favor, and disregards conclusory statements. *See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69-70 (1st Cir. 2021); *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 166 (1st Cir. 2021); *Lyman v. Baker*, 954 F.3d 351, 359-60 (1st Cir. 2020).

[1] Although HDI did not deny Downing unescorted access, a term of art defined by federal regulation, *see* 10 C.F.R. § 73.56, the Court must accept the "facts" pled at this early stage of litigation. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) (quoting the Supreme Court's *Twombly* and *Iqbal* decisions). HDI reserves the right to contest these facts.

Local 7's Petition presents a substantive-arbitrability issue: whether the parties agreed to submit to arbitration. *See Loc. 285, Serv. Emps. Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739 (1st Cir. 1995). Courts—not arbitrators—decide substantive arbitrability unless the parties clearly and unmistakably provide otherwise. *See Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Loc. 99*, 497 F.3d 83, 89 (1st Cir. 2007) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit," a party seeking to compel arbitration must demonstrate: "(1) that a valid agreement to arbitrate exists; (2) that the movant is entitled to invoke the arbitration clause; (3) that the other party is bound by that clause; and (4) that the claim asserted comes within the clause's scope." *Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 38 (1st Cir. 2019) (cleaned up). Here, Local 7 cannot meet these elements.

## II. LOCAL 7 IS NOT ENTITLED TO INVOKE THE NLA'S ARBITRATION CLAUSE

### A. Local 7 Is Not a Signatory to the NLA

Although Local 7 alleges it is a party to the NLA, *see* Doc. No. 1 at ¶ 17, the NLA neither names Local 7 nor bears its signature. *See* Doc. No. 1-2 at 2, 18. Instead, Local 7's affiliated international union, the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, is both named in and a signatory to the NLA. *Id.* Local 7 admits this fact in its Petition. *See* Doc. No. 1 at ¶ 12 ("The International Iron Workers, [Local 7's] parent body, signed the NLA."). But an international union and its affiliated local are separate legal entities and the international union's agreement does not bind its local affiliate. *Cf. McCrohan v. Uxbridge Police Ass'n Loc. #123*, 253 F. Supp. 3d 385, 386 (D. Mass. 2017) (refusing to hold state-level union liable for local affiliate's wrongdoing where local affiliate lacked assets and

plaintiff sought recovery from state affiliate). For this reason alone, Local 7's Petition should be dismissed because–as a non-signatory to the NLA–it lacks standing to compel arbitration under that agreement.

### B. Local 7 Is Not a Third-Party Beneficiary of the NLA

Local 7 alternatively asserts that it is a third-party beneficiary of the NLA. Doc. No. 1 at ¶ 17. But as a non-signatory trying to enforce an arbitration clause, it faces a "steep climb." *Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 38 (1st Cir. 2019). Specifically, Local 7 must show with "special clarity" that the contracting parties intended to confer the specific right to arbitrate upon it. The "critical fact" governing third-party beneficiary status is whether the underlying agreement "manifest[s] an intent to confer specific legal rights upon [the non-signatory]." *Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 312-13 (1st Cir. 2025) (quoting *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017)). Thus, the showing of a "mere benefit to [a] nonsignatory resulting from a signatory's exercise of its contractual rights is not enough." *Id.*; *InterGen N.V. v. Grp. Consultec*, 344 F.3d 134, 147 (1st Cir. 2003) ("[A] benefitting third party is not necessarily a third-party beneficiary.").

This inquiry is further limited in the arbitration context, where the signatories must specifically intend to confer arbitration rights on the third party, rather than merely general contractual rights. *Hogan*, 914 F.3d at 40 (concluding that the defendant "was not an intended third-party beneficiary of the signatories' agreement to arbitrate"); *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1117-18 (1st Cir. 1986) (rejecting nonsignatories' bid to compel arbitration based on the conclusion that the non-signatories were "not intended beneficiaries of the [contract's] arbitration clause" and distinguishing general contractual rights from arbitration rights).

Here, although the NLA references "Local Unions" in passing in the context of defining a contact representative to coordinate signatory site visits (Article VIII) and wage rates (Article IX), *see* Doc. No. 1-2 at 10, it certainly does not confer arbitration rights. Indeed, the NLA's grievance procedure contains no specific reference to Local 7 and only mentions the Business Representative of the local union in Step 1. *Id.* at 8. The reasonable inference from the NLA's specific inclusion of "Local Unions" in Articles VIII and IX, but deliberate omission from its arbitration provision, is that the signatories did not intend to confer any local unions–including Local 7– with arbitration rights. *See Mowbray*, 795 F.2d at 1118 ("[B]ecause the drafters specifically included the introducing firm in certain provisions, and because the introducing firm was not included in the arbitration clause, we believe the reasonable inference to be that the parties did not intend defendants-appellees, the introducing firm, to be a beneficiary of the arbitration clause.").

Article V reinforces this textual exclusion by routing the grievance procedure through the contractor and the signatory international union. *See* Doc. No. 1-2 at 8. Although Step 1 incorporates an informal discussion with the local union's business representative, Step 2, Step 3, and the formal power to demand arbitration rests entirely in the hands of the international union. *Id.* Because the NLA provides Local 7 with no direct right to arbitrate, it remains a non-beneficiary of the arbitration clause and lacks any basis to compel arbitration under it. *Hogan*, 914 F.3d at 40; *see InterGen*, 344 F.3d at 146 (declining to read into agreement "rights and obligations that the contracting parties did not see fit to include"). The Petition should be dismissed for this additional reason.

**C. <u>The Dispute Does Not Fall Within the Arbitration Clause's Scope.</u>**

Not only is Local 7 not entitled to invoke the NLA's arbitration provision, but the dispute here—denial of a union member's access to the Pilgrim Plant—does not fall within the scope of the NLA at all. "[W]hether a dispute falls within the scope of an arbitration clause depends on the

relationship between (1) the breadth of the arbitration clause and (2) the nature of the given claim." *U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 347 (D. Mass. 2015), *aff'd* 844 F.3d 26 (1st Cir. 2016) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014)). Here, although Article V of the NLA covers "[a]ny dispute alleging a violation of this Agreement (excluding jurisdictional disputes and alleged violations of Article XIX)," *see* Doc. No. 1-2 at 8-9, that coverage extends only to rights created by the agreement itself.

Local 7 cannot establish that its challenge to an access revocation falls within the NLA's dispute-resolution framework. The NLA grants HDI exclusive management rights over the Project, including who may be on site. *See* Doc. No. 1-2 at 5-6 (NLA, Art. II). Local 7 identifies no NLA provision restricting HDI's authority to revoke site access. Instead, it relies on conclusory allegations and irrelevant NLA provisions that make no mention of site access. *See, e.g,* Doc. 1 at ¶¶ 14, 34. Because the NLA leaves site access decisions to HDI's management discretion, with no reference to local unions, Local 7 alleges no NLA violation within the arbitration clause's scope.

## CONCLUSION

Local 7 cannot invoke the NLA's arbitration provision because it did not sign the NLA and the contracting parties did not confer arbitration rights on it as a third-party beneficiary. The dispute also falls outside Article V because Local 7 challenges HDI's site-access decision, not any violation of the NLA. HDI and Champion therefore respectfully request that the Court grant their Motion to Dismiss and dismiss the Petition with prejudice.

Respectfully submitted,

HOLTEC DECOMMISSIONING INTERNATIONAL, LLC,

By its Attorneys,

/s/ *Andrew L. Eisenberg*
Andrew L. Eisenberg
aeisenberg@constangy.com
Christopher R. Deubert
cdeubert@constagny.com
CONSTANGY, BROOKS, SMITH & PROPHETE LLP
800 Boylston St., Suite 1005
Boston, MA 02199
(617) 849-7880

Armin J. Moeller, Jr. (*pro hac vice application forthcoming)*
Ashley Eley Cannady (*pro hac vice application forthcoming)*
BALCH & BINGHAM LLP
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: 601-965-8156
amoeller@balch.com
acannady@balch.com

CHAMPION SPECIALTY SERVICES, LLC

By its Attorneys,

*/s/ Benjamin M. McGovern*
Benjamin M. McGovern BBO No. 661611
benjamin.mcgovern@hklaw.com
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: September 21, 2026

**CERTIFICATE OF SERVICE**

I, Benjamin M. McGovern, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 21st day of September, 2026.

*/s/ Benjamin M. McGovern*
Benjamin M. McGovern

Dated: September 21, 2026