UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON, MA CIVIL ACTION NO. **1:26-cv-13333-MJJ**

Iron Workers Local 7, of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, Plaintiff, (“**Union**” or “**Local 7**”)

v.

Holtec Decommissioning International, LLC (“**HDI**”)

and

Champion Specialty Services, LLC (“**Champion**”)
Defendants.

## PLAINTIFF’S 1ST AMENDED COMPLAINT, AS A MATTER OF COURSE, AND ACTION & PETITION TO COMPEL ARBITRATION

### Introduction

1. Plaintiff Union seeks a Court Order compelling each Defendant to arbitrate grievances arising out of Defendant Holtec Decommissioning International, LLC (“HDI”)’s refusal to provide Mr. Michael Downing (the Union’s Member) with access to the Pilgrim Nuclear Power Plant located in Plymouth, Massachusetts (“Pilgrim Plant”) in violation of the National Labor Agreement (“NLA”) – a labor contract governing Mr. Downing’s construction work as an employee of HDI’s subcontractor, i.e., Defendant Champion Specialty Services, LLC (“Champion”). Exhibit A (“NLA”).

### Jurisdiction and Venue

2. Subject matter jurisdiction for this Court exists by way of federal statutes, specifically, § 301 of the Labor Management Relations Act (“LMRA”), 29 USC § 185(a), *et seq.* and the Federal Arbitration Act (“FAA”), 9 U.S.C. §§ 1 and 4, *et seq.*
3. Venue lies within this judicial District also under § 301 of the LMRA, 29 U.S.C. § 185(a),

and because each party operates its own business affairs within this judicial District.

**Parties**

4. Plaintiff Iron Workers Local 7 ("Union") operates as a labor organization defined by the LMRA, 29 U.S.C § 152 (5), *et seq*., from its business office located at 195 Old Colony Avenue, South Boston, Massachusetts 02127.

5. Defendant HDI is, upon information and belief, registered to conduct business as a foreign business enterprise within Massachusetts, and HDI recited to the Secretary of the Commonwealth of Massachusetts that it has a:

    a. Principal office located at 1 Holtec Boulevard in Camden, New Jersey 08104;

    b. Massachusetts office located at 600 Rocky Hill Road, in Plymouth, MA 02360; and

    c. Resident agent named CT Corporation System of 155 Federal Street, Suite 700, Boston, MA 02110. Exhibit B (HDI's MA Sec. State Corp. Recs).

6. Defendant Champion is, upon information and belief, registered to conduct business as a foreign business enterprise within Massachusetts, and it recited to the Secretary of the Commonwealth of Massachusetts that it has a:

    a. Principal office is located at 971 U.S. Highway 202N STE N in Branchburg, New Jersey 08876;

    b. Massachusetts office located at 82 Wendell Avenue, STE 100, Pittsfield, MA 01201; and

    c. Resident Agent named Northwest Registered Agent Service Inc., of 82 Wendell Avenue STE 100, Pittsfield, MA 01201. Exhibit C (Champion MA Corp. Filing).

**Facts**

7. At Exhibit A is a true and genuine copy of the NLA, a collective bargaining agreement. Exhibit A ("NLA").

8. HDI is a wholly owned subsidiary of Holtec International of Camden, New Jersey.

9. Holtec International owns, upon information and belief, the Pilgrim Plant, by way of its subsidiary Holtec Pilgrim, LLC. Exhibit D (Holtec Statement of Purchase & Holtec Pilgrim's MA Sec. State Corp. Recs.).

10. HDI is, upon information and belief, the licensed operator of the Pilgrim Plant and acts as the licensee oversight agent for the Pilgrim Plant's decommissioning work, and HDI is licensed for decommissioning the Pilgrim Plant by the Nuclear Regulatory Commission.

11. HDI signed the NLA.

12. The International Iron Workers -the Union's parent body ("International"), signed the NLA.

13. The International signed the NLA, as an agent of Local 7 and on its behalf and to bind Local 7 to obligations therein, to receive benefits recited therein, and for other uses and benefits for Local 7 and its Members, including the arbitration provision.

14. Local 7 is a subordinate sub-division of its International parent body.

15. Under the NLA, Holtec may, if it so decides in its sole and exclusive discretion, hire employees directly to perform work covered by the NLA ("Covered Work"), including Covered Work at the Pilgrim Plant.

16. The NLA incorporates by reference the Plaintiff Union's current collective bargaining agreement for pay rates and for recognizing the Union as bargaining representative of Iron Workers employed by HDI (should HDI choose to hire directly) or Champion-employed Iron Workers at the Pilgrim Plant. Exhibit A (NLA), at pages 9 and 10: Article VII – Jobsite Representatives; Article VIII - Local Union Representatives; and Article IX - Wage Rates, Fringe Benefits and Payday.

17. Throughout its time at the Pilgrim Plant, HDI participated from time to time with the Union

regarding labor relations activity on the Pilgrim Plant, e.g.:

a. HDI met with the Union's (and other local union) business agent and Union steward (including simultaneously with other of the local trades' agents and stewards) to discuss labor concerns and the potential to arrange monthly meetings; and

b. HDI gave assurances to Mr. Downing that his employer, Champion, would not be allowed to retaliate against him for complaining about safety matters, including should Mr. Downing accept a foreman's position by leaving his prior position as the Union's steward for Champion's employees.

18. In addition to the above, during all times material to the matters referenced herein HDI operated in a manner at the Pilgrim Plant such that it recognized the Plaintiff Union as the bargaining agent and local area representative of Champion-employed Iron Workers, including Mr. Michael Downing.

19. The Plaintiff Union is a party to, or alternatively a third-party beneficiary of, the NLA.

20. The Union is the lawful bargaining agent for Iron Workers who perform the Union's scope of work within the NLA Covered Work at the Pilgrim Plant.

21. The NLA recites that Holtec may, if it so chooses, engage contractors or others to perform all or portions of the Covered Work. For example, the NLA recites:

> ARTICLE XVII- SUBCONTRACTING
> If the Contractor contracts or subcontracts any work covered by this Agreement to be done at the jobsite to any person or proprietor who is not signatory to this Agreement, the Contractor shall require such subcontractor to be bound by all the provisions of this Agreement by signing the participation agreement set forth in Exhibit A hereto. The subcontractor will not be required to become signatory to any collective bargaining agreements for any work within the scope of this Agreement but will be required to comply will [typo for 'with'] all terms and conditions of this Agreement.

Exhibit A (NLA), at Page 16, Article XVII.

22. HDI contracted, upon information and belief, with Champion for Champion to perform,

among other things, at least some NLA Covered Work at the Pilgrim Plant.

23. For labor within the scope of work of Champion's contract with HDI at the Pilgrim Plant, Champion agreed, upon information and belief, to abide by the NLA by signing the "participation agreement" recited at the NLA's above-referenced Article XVII, or Champion otherwise adopted by conduct that it agreed to be bound by the NLA.
24. Champion hired employees to perform Champion's portion of the Covered Work, including the Plaintiff Union's Member, Mr. Michael Downing.
25. Mr. Downing's employment with Champion was NLA Covered Work at the Pilgrim Plant.

**Disputes Requiring Resolution by the NLA's Grievance Procedure.**

26. The legal issues and disputed material facts for an arbitrator's determination concern an assignment performed on March 17, 2026, and arose out of substantially the same operative facts, including, in summary:
    a. HDI and Champion claim, which the Union and Mr. Downing dispute, that Mr. Downing was the 'foreman in charge' of a specific crew assembled by Champion to perform a specific assignment on March 17, 2026 ("March 17th Assignment"). The March 17th Assignment was to attach rigging gear to what the parties commonly call a "seavan" (a small container express, i.e., Conex-type, cargo box) containing material for hoisting by way of an overhead crane and to place the seavan onto a truck flat-bed that would remove the seavan with its material from the Pilgrim Plant site; and
    b. A Radiation Protection ("RP") Technician was required to inspect the seavan at issue and use a device to scan the seavan and material to measure its degree of radioactivity. If the measurement indicated dosage low enough to permit the material to leave the

Pilgrim Plant site, the overhead crane would be unlocked for use, indicating to workers rigging the material that they may use the crane to hoist the seavan with its material and place it onto a truck for exit from the Pilgrim Plant;

c. HDI and Champion claim, which the Union and Mr. Downing dispute, that the crew's designated foreman did not receive RP Technician permission or clearance to use the crane to hoist and remove the seavan, i.e., perform the March 17th Assignment; and

d. HDI and Champion claim, which the Union and Mr. Downing dispute, that Mr. Downing misrepresented statements to HDI's investigator during an investigation of the March 17th Assignment, specifically, as to whether Champion's rigging crew had RP Technician clearance to perform the March 17th Assignment.

e. More specifically, HDI and Champion claim, which the Union and Mr. Downing dispute, that Mr. Downing violated a rule or regulation of HDI and Champion requiring Mr. Downing to have obtained a RP Technician's approval to rigg and hoist the seavan at issue. See, e.g., NLA, at Art. XVI Section 2.

> "A violation of the Project rules and regulations is just cause for disciplinary action, subject to Article V (Grievance Procedure) of the Agreement."

See, e.g., <u>Exhibit J</u> (HDI 5/8/2026 Ltr. to Long), at pages 3 and 4; and <u>Exhibit K</u> (Champion's 5/8/2026 Ltr. to Long) [yellow highlights provided].

27. Before the material left the Plant site, RP Technicians measured and learned, upon information and belief, that the material's radioactivity dosage rate exceeded an amount that would allow it to leave the Pilgrim Plant. The RP Technician stopped the rigging crew from continuing with its material removal.

28. An investigation ensued regarding the March 17th Assignment. Following its investigation, HDI on April 14, 2026, denied Mr. Downing unescorted access to the Pilgrim Plant.

29. About that same time and given that Mr. Downing lacked such access to the Pilgrim Plant, Champion informed Mr. Downing that he was immediately laid off, pending a retraction -if ever, of HDI's denial to him of unescorted access to Pilgrim Plant.

30. The Union timely demanded arbitration of HDI's denial of Mr. Downing's access to the Pilgrim Plant and also demanded arbitration of Champion's layoff of Mr. Downing.

31. The parties extended the NLA's timeframes, conducted further fact-finding, and engaged in resolution negotiations. Exhibit H (Appeal to Arbitration), Email (Long to Moller & Fernandez) 4/21/2026, 10:51 am, page 3.

32. The parties failed to resolve the matters.

33. The Union timely demanded that each Defendant participate in selecting an arbitrator.

34. The Union in writing timely informed HDI and Champion that it wishes to appeal the grievances to arbitration. Exhibit H (Union Appeal to Arbitration), Email, Long to Attorneys Moeller and Fernandez) 5/5/26, 6:43 am; Exhibit E (Union-HDI FMCS Arb. Application); Exhibit F (Union–Champion FMCS Arb. Application).

35. The NLA's "Grievance Procedure" recites that:

> Any dispute alleging a violation of this Agreement (excluding jurisdictional disputes and alleged violations of Article **XIX)** shall be resolved in accordance with the procedure set forth herein. *** The respective time limits between grievance steps may be extended by mutual agreement of the parties. Settlement of grievances may be arrived at in any step of the grievance procedure and shall be final and binding upon the Unions and the Contractor.
> ***
> Step 3: If the grievance is not resolved in the Step 2 meeting, the grieving party may within fifteen (15) calendar days after that meeting notify the other party in writing that it wishes to appeal the grievance to arbitration. The parties then will meet within fifteen (15) calendar days after such notice in order to agree on the selection of the arbitrator. **If the parties are unable to agree upon an arbitrator, application may be made by either party to the Federal Mediation and Conciliation Service for a panel of seven (7) arbitrators, upon receipt of which both parties shall immediately, alternately strike names, choosing by lot which party is to strike first, until the last name remains,**

**which person shall be designated as the arbitrator [bold added].**
Exhibit A, (NLA), Article V, at Page 8.

36. HDI's denial to Mr. Downing of unescorted access to the Pilgrim Plant is a violation of the NLA.
37. Champion's layoff of Mr. Downing is a violation of the NLA.
38. On June 23, 2026, counsel for the parties held their last remote video conference attempt to resolve the disputes.
39. At the end of that June 23, 2026 session, HDI related to the Union that it intended to contact counsel to the International Union, in a final attempt at resolution. The Union did not receive a response from its email to HDI as to whether it successfully contacted the International Union's counsel. Exhibit I (Email Long to Moeller and Fernandez) July 8, 2026, 9:13 am. Negotiations for resolution ended.

**Facts Giving Rise to this Petition.**

40. On June 23, 2026, HDI refused to participate in selecting an arbitrator and refused to participate in arbitration.
41. On June 23, 2026, Champion refused to participate in selecting an arbitrator and refused to participate in an arbitration.
42. On June 23, 2026, the FMCS sent an email stating words to the effect that it lacked authority to continue the matter, absent HDI and Champion's participation. Exhibit G (FMCS & Union Email Chain), 6/23/2026, 4:23 pm, at page 1.
43. The factual and other disputes arising out of the March 17th Assignment are governed by the NLA's Grievance Procedure such that:
    a. An arbitrator must decide the factual and other matters regarding whether HDI

violated the NLA in HDI's denial of unrestricted access to Mr. Downing to the Pilgrim Plant; and

b. An arbitrator must decide the factual and other matters regarding whether Champion violated the NLA by Champion's cessation of Mr. Downing's employment as a Champion employee performing NLA Covered Work at the Pilgrim Plant; and

c. Federal regulations do not prohibit nor preclude an arbitration requirement recited in a collective bargaining agreement ("CBA"), like this NLA, as to disputes arising from a nuclear plant operator's denial of unrestricted access to a worker performing labor in the plant, where the work is governed by the CBA. *MIT v. Research, Dev. & Tech. Employees Union*, 980 F. Supp. 2d 8 (D. Mass. 2013)(Young, J.); *Exelon Generation Co., LLC v. Local 15, Int'l Brotherhood of Elec. Workers*, 676 F. 3d 566 (7th Cir. 2012) (reversing district court's summary judgment decision finding Decl. Judgment in favor of employer & reversing denial of union's action to compel arbitration of employer's access denial) cited supportively by *Kisor v. Wilkie*, 588 U.S. 558, 577 and FN 38 (2019).

44. Champion and the Union engaged in use of the arbitration provision in NLA during a dispute in 2023. In that dispute, the Union alleged that Champion violated the NLA by terminating the same Mr. Downing at issue in this current matter ("2023-Arbitration"). The parties held an arbitration in accord with the NLA. The International was not involved, including as party or participant, in that 2023-Arbitration. Both parties, Champion and Local 7, were represented by counsel, Champion's lawyer was Joel White of Fox Rothchild. Local 7 by undersigned counsel. The 2023-Arbitration begin by Champion presenting its cases in chief. When Champion rested, the Union moved for summary judgment. After discussions with

the Arbitrator, Champion and Local 7, *via* counsel fully settled the case. Champion returned Mr. Downing to work with full pay and benefits and removal from Champion's records any adverse material or reference adverse to Mr. Downing that arose from that matter.

45. HDI was, upon information and belief, aware of and acquiesced to the Downing 2023-Arbitration and settlement.

46. Neither Champion nor HDI stated that Local 7 could not use the NLA's arbitration provision to resolve that 2023-Arbitration. Neither Defendant claimed or suggested that Local 7 was not a party to the NLA or that Local 7 could not avail itself of the arbitration provision.

47. Among other benefits, including those reference above, of the NLA, Local 7 benefited by the NLA provisions by having:

    a. Received all calls to refer employees, not the International Union, under the NLA;
    b. Appointed and exclusively selected all stewards for the Union;
    c. Received all steward reports, exclusively;
    d. Handled grievances and an arbitration successfully; and
    e. Received dues and other benefits for hourly labor performed by its Members at the Pilgrim Plant, including where Champion or any other NLA contractor or subcontractor employed a Local 7 Member;
    f. Ensured correct contributions were made from the NLA employers into Local 7 associated jointly trusteed labor and management funds, e.g., retirement funds, health insurance funds, apprenticeship training funds, labor-management cooperation trust fund, and other contributions from employers that employed Local 7 Members at the Pilgrim Plant, and such contributions have substantially aiding the actuarial projections to financially sustain of such funds.

48. The International Union has never appointed a NLA "Steward". Local 7 appointed all of the NLA's stewards for Iron Workers, and no steward ever reported to the International. Stewards always reported to Local 7.

49. Local 7 financed and provided the NLA requisite training to the Iron Workers employed at the Pilgrim Plant, not the International Union body.

50. During all times material to the matters raised herein and during all operations of HDI at the Pilgrim Plant, the International has not participated, beyond signing the NLA, in site access "Officials" (NLA, p. 10 Art. VIII) selections, employee referrals or steward selections. All have been handled by Local 7, changes have been made, all exclusively handled and administered by Local 7.

51. More specifically, HDI and Champion changed on more than a few occasions, the weekly schedule from 5 days per week to a 4-day at 10 hours a day week. During each of those times, HDI and/or Champion communicated, upon information and belief, with only the local unions, including Local 7, and not, upon information and belief, with the International. Changes occurred under Articles VIII, IX, X, and XI, among other articles and provisions, and HDI only discussed or provided notice to the local unions to negotiate, resolve, or otherwise navigate and implement those changes.

52. The International has not, upon information and belief, met at the Pilgrim Plant with any individual regarding any wage or benefit dispute issues, holidays, or other grievances that arose. All such matters were handled directly by Local 7 up to and including arbitration.

53. Since HDI's time at the Pilgrim Plant (about six years ago), Local 7 handled all grievances to resolution to date, not the International. E.g., HDI or its subcontractor negotiated a holiday pay grievance with only the local unions subordinate to their internationals that signed the

NLA.

54. Since the inception of its work at the Plymouth Pilgrim Plant, HDI by its conduct has waived any rights to claim that Local 7 is not a party to the NLA or the NLA arbitration provision.

55. Since the inception of its work at the Pilgrim Plant, Champion by its conduct has waived any rights, if any, to claim that Local 7 may not invoke the NLA arbitration provision to resolve grievances.

56. The course of conduct of the parties hereto since the beginning of HDI's presence at the Pilgrim Plant has been consistent with HDI (and its subcontractors) as recognizing Local 7 as a party to the NLA, including for the purposes of enforcing to arbitration any dispute alleging a violation of the NLA.

57. HDI and Champion has caused harm, injury, and losses to Local 7's reputation, as Members deem it is insufficiently empowered to represent them for timely handling grievances arising out disputes a Member may have at the Pilgrim Plant, including through direct use of the arbitration provision of the NLA. These losses cause disharmony, Members' insecurity at the Pilgrim Plant regarding complaining as to safety or other matters, and HDI's and Champion's conduct has chilled Local 7's Members cooperation with their local union in exercising rights under the NLA.

## CAUSES OF ACTION

### Count I

(As to HDI, LMRA § 301 and the FAA § 4)

58. Each of the above paragraphs is incorporated here, and the Union further states:

59. This is an action by Iron Workers Local 7 to remedy serious injury, loss, and harm and to compel HDI to arbitrate the disputes referenced herein as to HDI in accord with the NLA, the LMRA at § 301, and the FAA § 4.

60. HDI's refusal to arbitrate is frivolous, unreasonable, or without justification.

61. By its conduct recited in the above factual allegations and elsewhere, HDI has caused Local 7 serious and substantial injury, harm, and loss, including but not limited to irreparable harm to Local 7's reputation as an effective bargaining agent of the Members employed at the Plymouth Plant.

62. The Union is entitled to a summary order against HDI compelling arbitration under the FAA § 4 and § 301 of the LMRA, 29 U.S.C. § 185 (a).

**Count II**
(As to Champion, LMRA § 301 and the FAA § 4)

63. Each of the above paragraphs is incorporated here, and the Union further states:

64. This is an action by Iron Workers Local 7 to remedy serious injury, loss, and harm and to compel Champion to arbitrate the disputes referenced herein as to Champion in accord with the NLA, the LMRA at § 301, and the FAA § 4.

65. Champion's refusal to arbitrate is frivolous, unreasonable, or without justification.

66. By its conduct recited in the above in the factual allegations and elsewhere, Champion has caused Local 7 serious and substantial injury, harm, and loss, including but not limited to irreparable harm to Local 7's reputation as an effective bargaining agent of the Members employed at the Plymouth Plant.

67. The Union is entitled to a summary order against Champion compelling arbitration under the FAA § 4 and § 301 of the LMRA, 29 U.S.C. § 185 (a).

Count III
(Equitable Estoppel)

68. Each of the above paragraphs is incorporated here, and the Union further states:

69. Local 7 is entitled to an order that HDI is equitably estopped from refusing to arbitrate the grievances raised herein.

70. Local 7 is entitled to an order that Champion is equitably estopped from refusing to arbitrate the grievances raised herein.

71. This an action in equitable estoppel seeking to stop HDI and Champion from claiming that Local 7 is not a party to the NLA and refusing to arbitrate the disputes raised herein. Local 7.

## Prayer for Relief

WHEREFORE, the Plaintiff Union respectfully prays that this Court:

a. Enters an Order under summary judgment review in favor of Iron Workers Local 7; and
b. Enters an Order compelling HDI to submit its denial to Mr. Downing unrestricted access to the Pilgrim Plant and all outstanding issues related thereto to arbitration, including in accord with the NLA's arbitrator selection clause; and
c. Enters an Order compelling Champion to submit all outstanding issues regarding its cessation of Michael Downing's employment with Champion at the Pilgrim Plant, including in accord with the NLA's arbitrator selection clause; and
d. Enters and Order applying equitable estoppel against HDI and Champion from claiming that Local 7 is not a party to the NLA and its arbitration clause; and
e. Awards the Union its costs and reasonable attorney fees expended in bringing this petition under applicable law, including the rule of *Local 285, Local 285, SEIU v. Nonotuck Resource Associates, Inc.*, 64 F.3d 735, 737 (1st Cir. 1995); see also *Washington Hosp. Center v. SEIU Local 722, AFL-CIO*, 746 F.2d 1503 (D.C. Cir. 1984); and
f. Provide such further and other relief as this Court may deem appropriate.

Plaintiff, Iron Workers Local 7
By its Attorney,

/s/ Mickey Long
Mickey Long BBO# 634388
P.O. Box E-1
193 Old Colony Avenue
Boston, MA 02127
TEL: (617) 269-0229
FAX: 617.765.4300
mickeyLong@wagelaw.net.

October 5, 2026

## CERTIFICATION OF SERVICE

I, Mickey Long, hereby certify that on this 5th day of October 2026 this document was filed through the ECF system to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that paper copies will be sent to those parties, if any, indicated as non-registered participants,

/s/ *Mickey Long*

Mickey Long